UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**
98 MAY -8 PM 3: 25
U.S. DISTRICT COURT
N.D. OF ALABAMA

WANDA G. LEDBETTER, )
)
    Plaintiff, )
)
vs. ) Civil Action No. CV-95-S-3230-NE
)
HUNTSVILLE CITY SCHOOL )
SYSTEM, )
)
    Defendant. )

**ENTERED**
MAY 8 1998

## MEMORANDUM OPINION

This action was tried to the court, sitting without the aid of a jury, on October 1-2, 1997. Plaintiff presented claims of disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. Plaintiff prevailed on her retaliation claim, and this court entered a judgment against defendant for compensatory damages in the sum of $6,000.00. (See Judgment entered December 18, 1997 (Doc. No. 37).) The action now is before the court on plaintiff's application for an award of attorneys' fees and costs.

### I. PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES

Plaintiff seeks attorneys' fees[1] in the amount of $26,271.50 pursuant to 42 U.S.C. § 12205, which provides: "In any action ... commenced pursuant to this chapter, the court ..., in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs...." See

---

[1] Plaintiff also seeks costs in the amount of $505.80. Costs in the amount of $431.80 were taxed against defendant on January 22, 1998. (Document No. 38.) Accordingly, the court need not address that aspect of plaintiff's motion.

*Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986)(right to recover fees belongs to the party, not the attorney). A "prevailing party" is one who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *see also, e.g., Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) ("[T]o qualify as a prevailing party, ... [w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement"). Mrs. Ledbetter is a prevailing party in this action as to one of her two claims. "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943.

A.  **Attorneys' Fees**

Plaintiff's request for fees may be itemized as follows:

|  | **Hours** | **Hourly Fee** | **Total** |
|---|---|---|---|
| Alicia K. Haynes | 102.70 | $165.00 | $16,945.50 |
| Mark McKnight | 46.60 | $185.00 | $8,621.00 |
| Beth Gann (paralegal) | 14.10 | $50.00 | $705.00 |
|  |  | **TOTAL** | $26,271.50 |

The Eleventh Circuit defined the method for determining an award of attorneys' fees in *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988). The district court

2

must multiply the number of hours reasonably expended by a reasonable hourly rate to arrive at an amount called the "lodestar." *Norman*, 836 F.2d 1292 at 1299. The party applying for attorneys' fees is responsible for submitting satisfactory evidence to establish both that the requested hourly rate is in accord with prevailing market rates, and, that the number of hours expended by the attorney in the prosecution of plaintiff's claims are reasonable. *Id.* at 1303. The district court then must determine whether any portion of the lodestar should be adjusted upwards or downwards. *Hensley*, 461 U.S. at 433-34, 103 S.Ct. at 1939-40. The court is guided in that process by twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[2] Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of professional relationship with the client; and, (12) awards in similar cases.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

3

1. **Reasonable Hourly Rate**

The first step in calculating the "lodestar" is to ascertain a reasonable hourly rate for plaintiff's attorneys. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S.Ct. 1541, 1547 n.11, 79 L.Ed.2d 891 (1984)). The "rate of attorney's fees is that of the place where the case is filed." *Cullens v. Georgia Department of Transportation*, 29 F.3d 1489, 1494 (11th Cir. 1994).

Plaintiff filed this action in the United States District Court for the Northern District of Alabama, sitting in Huntsville. Therefore, the Northeastern Division of the Northern District of Alabama is the "relevant legal community." *See Ross v. Buckeye Cellulose Corporation*, 764 F. Supp. 1543 (M.D. Ga. 1991); *In Re Barger*, 180 B.R. 326 (S.D. Ga. 1995); *Lattimore v. Oman Construction*, 714 F. Supp. 1178, 1179 (N.D. Ala. 1988)("The relevant market for legal services is the Northern District of Alabama, consisting of the thirty-one northernmost counties of the state"), *aff'd*, 868 F.2d 437 (11th Cir. 1989).

The movant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates, and may meet this burden by producing either direct evidence of

4

rates charged under similar circumstances, or opinion evidence[3] of reasonable rates. Norman, 836 F.2d at 1299. The court also may consider the Johnson factors "to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court." Id. at 1299-1300.

The court seldom is presented one figure as a prevailing market rate. Normally, the movant asks for rates approximating the highest charged in the community, whereas the non-movant generally submits evidence of the lowest rate charged in any part of the community. Id. at 1300. Another factor complicating the determination of a prevailing market rate is this: it is fluid, moving in synchrony with the tides and currents of competition among members of the bar.

Plaintiff presents the affidavits of her attorneys, Alicia K. Haynes and Mark McKnight, attesting to their experience and customary fee. Satisfactory evidence requires more than just the affidavit of the attorneys performing the work for which compensation is sought, however. Blum, 465 U.S. at 896 n.11, 104 S.Ct. at 1547 n.11. Thus, plaintiff also tenders the affidavits of experienced Birmingham civil rights attorneys Marion F. Walker and Ann C. Robertson, who aver that, based on the prevailing market rate in the Northern District of Alabama for attorneys with similar

---

[3] "The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." Norman, 836 F.2d at 1301.

5

skill and experience, plaintiff's counsel are entitled to the fees sought. Specifically, Robertson avers that a reasonable fee for an attorney of Ms. Haynes's skill and experience practicing in the Northern District would range between $220 and $225 an hour, and a reasonable fee for an attorney of Mr. McKnight's skill and experience would range between $225 and $250 an hour. Walker opines that a reasonable fee for attorneys of similar skill and experience would fall in a range between $185 to $195 an hour for Ms. Haynes, and between $185 and $200 an hour for Mr. McKnight.

Defendant presents the affidavit of a Huntsville attorney, George W. Royer, Jr., who is experienced in the areas of employment and civil rights litigation.[4] He avers that a reasonable rate for an attorney of Ms. Haynes' skill and experience practicing in the Northeastern Division of the Northern District on cases of this nature would be $120 to $130 an hour. For an attorney of Mr. McKnight's skill and experience, Royer opines that a fee in the range of $130 to $140 an hour would be reasonable.

Thus, the affidavit submitted by defendant reflects that prevailing rates in Huntsville and the Northeastern Division of this court are somewhat lower than the requested rates. Standing alone, such evidence is insufficient to establish the reasonable hourly rate appropriate for this case. Yet, coupled with plaintiff's evidence of the prevailing rates for attorneys throughout the full expanse of the Northern District, Royer's

---

[4] Defendant refers in brief to the affidavit of another Huntsville attorney, E. Cutter Hughes. The record contains no affidavit from Mr. Hughes, however.

6

affidavit provides the court with a range of fees appropriate for the Northern District of Alabama. For an attorney of Ms. Haynes' skill and experience, the prevailing rate begins at $130 and rises to $225 an hour. For an attorney of Mr. McKnight's skill and experience, the prevailing rate ranges between $140 and $250 an hour. To that broad range, the court adds its own experience to arrive at a reasonable hourly rate for the attorneys in this case.[5]

Undoubtedly the most important factor in determining a lawyer's reasonable fee, and one cited in *Johnson*, is the skill of the attorneys involved. The court in *Norman* suggests that "skill" incorporates the notions of organization,[6] efficiency,[7] knowledge,[8] and persuasiveness.

> Once a district court has winnowed down the comparables offered by the parties to those which are relevant to the facts and circumstances of the case, the client, and the attorney before it, this court would still expect that there might be a range in prevailing market rates. That range is accounted for almost always by experience, skill and reputation. A closer analysis suggests that reputation and experience are usually only proxies for skill, which in a rational economic environment is the ultimate determinant of compensation level.

*Norman*, 836 F.2d at 1300. A district court judge, having observed the trial of a case, may appropriately make her or his own

---

[5] Where "affidavits submitted in support of the fee application and the affidavits submitted in opposition thereto are by and large inadequate, ... the district court ... must rely on its own expertise in determining a reasonable hourly rate." *Norman*, 836 F.2d at 1304.

[6] "Organization means that discovery devices and motions are thought out and not utilized in a random and erratic way or for the mere purpose of going through established routines." *Norman*, 836 F.2d at 1301.

[7] "Efficiency means doing well just what ought to be done and doing it in a minimum of time." *Norman*, 836 F.2d at 1301.

[8] Knowledge entails "knowledge of trial practice and knowledge of substantive law." *Norman*, 836 F.2d at 1301.

7

determination of a particular advocate's skill level in setting a reasonable fee for that attorney.[9] When making such an observational evaluation, this court recognizes that, sometimes, the outcome of a case turns less on the strength of the facts than on a lawyer's skill in presenting those facts.

> Some clients prevail only because of the compelling merit of their case and in spite of their attorney's efforts to communicate a position. In other cases, usually close ones, the better advocate may actually sway the outcome on occasion. In the usual case, both the merits and the advocacy control the outcome. The measure of good advocacy is that the client's best positions are advanced clearly, crisply and compellingly.

*Id.* at 1301. Both Ms. Haynes and Mr. McKnight are able advocates who advanced their client's best positions in such a manner. Significantly, both atorneys were retained to represent plaintiff at a late hour. Plaintiff initially proceeded *pro se*, and very little discovery was conducted by either party. By the time plaintiff retained counsel, discovery was closed. Thus, Haynes and McKnight were forced to familiarize themselves with the case and prepare for a rapidly approaching trial, all without benefit of discovery.

Both attorneys ably met that challenge. In doing so, each drew on their skill and experience in litigating similar cases. Ms. Haynes has had extensive experience representing plaintiffs in the areas of civil rights and employment. She has been involved in 50 cases of that nature over the past six years. Mr. McKnight has

---

[9] *See Norman*, 836 F.2d at 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.").

8

tried approximately 70 cases to verdict, including actions in which his clients have recovered in excess of one million dollars. Such experience prepared him well to undertake Mrs. Ledbetter's case on short notice.

Haynes normally charges $225 an hour on civil rights matters, and $185 an hour on other matters. McKnight regularly charges $175 an hour to defense clients, and he has charged in excess of $225 an hour in other types of litigation.

Haynes' and McKnight's advocacy on plaintiff's behalf, in less than ideal circumstances, was exemplary. That determination, coupled with the court's finding that the requested hourly rate falls well within the range currently prevailing in the Northern District, warrants a rate for Haynes in the amount of $165.00 an hour, and for McKnight in the amount of $185.00 an hour.

In *Missouri v. Jenkins*, 491 U.S. 274, 282-284, 109 S.Ct. 2463 2469-72, 105 L.Ed.2d 229 (1989), the Supreme Court ruled that the work of paralegals, law clerks, and other paraprofessionals is compensable, whether at market rate or at cost, as such services are compensated generally in the relevant legal community. This court finds the rate requested for paralegal work, at $50 per hour, to be reasonable.[10]

### 2. Hours Reasonably Expended

The second step in computing the lodestar requires a determination of the number of hours reasonably expended by

---

[10] *See* Affidavit of George W. Royer, Jr., submitted in response to plaintiff's motion for an award of attorney's fees and costs, at 2.

9

counsel. Attorneys are required to exercise "billing judgment." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

> "[B]illing judgment" means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis.

*Norman*, 836 F.2d at 1301.

The court also is charged with redacting redundant hours. *Id.* "[E]xcessive, redundant, or otherwise unnecessary" hours should be excluded from the amount claimed. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939-40. Nevertheless, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302 (citing *Johnson v. University College of University of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489 (1983)).

Finally, the district court may deduct time spent on discrete and unsuccessful claims. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. However, such reductions, if warranted at all, are more appropriately considered after the court ascertains the lodestar. *See id*, 461 U.S. at 436-37, 103 S.Ct. at 1941 (explicitly stating that a court could simply reduce the award to account for the plaintiff's limited success instead of eliminating hours specifically expended on unsuccessful claims); *accord Popham v.*

10

*City of Kennessaw*, 820 F.2d 1570, 1581 (11th Cir. 1987). The Eleventh Circuit holds that "[i]f the court disallows hours it must explain which hours are disallowed and show why an award of these hours would be improper." *Norman* 836 F.2d at 1304 (citations omitted).

Thus, this court proceeds with a review of the reasonableness of the hours claimed, considering whether any are excessive, redundant, or otherwise unnecessary.

### a) Alicia K. Haynes

Plaintiff requests 102.70 hours for the work of Alicia K. Haynes. Of those, none appear duplicative of work performed by others. None appear unnecessary or excessive.[11] Instead, the time expended reflects thoroughness and diligence, and a committed effort to her client under exigent circumstances. Thus, this court concludes that plaintiff's request for compensation for 102.70 hours of work by Haynes is reasonable.

### b) Mark McKnight

Plaintiff seeks recovery for 46.60 hours of work performed by McKnight. McKnight provided significant assistance to Haynes in preparing for trial of this case on short notice and without the benefit of discovery.

Defendant contends that some of McKnight's hours are duplicative or otherwise improperly billed. Upon a review of

---

[11] Defendant's expert offers no opinion on the reasonableness of the hours sought by plaintiff. In brief, defendant asserts that a few of the claimed hours are duplicative or improperly billed, but the court finds those arguments without merit, with one exception discussed *infra*.

11

McKnight's billing records, the court finds that 8.0 hours of trial time reported by McKnight is in error. Accordingly, the court reduces plaintiff's request for compensation to McKnight by that amount. Recovery of 38.60 hours for work done by McKnight is reasonable.

### c) Beth Gann

Plaintiff seeks compensation for 14.10 hours of work performed by Ms. Gann, Haynes' paralegal. Again, the court discerns no duplication or unnecessary hours from the time records submitted. The records reveal that Gann assisted Haynes with trial preparation, legal research, and the organization of exhibits and witnesses for trial. Accordingly, this court finds the time spent by Gann to be reasonable.

### 3. Lodestar Computation

|  | Reasonable Hours | Reasonable Fee | Total |
|---|---|---|---|
| Alicia K. Haynes | 102.70 | $165.00 | $16,945.50 |
| Mark McKnight | 38.60 | $185.00 | $7,141.00 |
| Beth Gann (paralegal) | 14.10 | $50.00 | $705.00 |
|  |  | **TOTAL LODESTAR** | $24,791.50 |

### 4. Adjustments to the Lodestar

After determining the lodestar amount, the court should adjust the final fees awarded to reflect the results obtained through litigation. *Hensley*, 416 U.S. at 434, 103 S.Ct. at 1939-40. The Eleventh Circuit provides the following guidance:

12

> If the result was excellent, then the court should
> compensate for all hours reasonably expended. ... If
> the result was partial or limited success, then the
> lodestar must be reduced to an amount that is not
> excessive. ... In doing so, the court may attempt to
> identify specific hours spent in unsuccessful claims or
> it may simply reduce the award by some portion. ... A
> reduction is appropriate if the relief, however
> significant, is limited in comparison to the scope of the
> litigation as a whole. ... Where all theories derive
> from a common core of operative facts, the focus should
> be on the significance of overall results as a function
> of total reasonable hours. ... It is improper to make
> the reduction based on a simple ratio of successful
> issues to issues raised.... The vindication of a
> constitutional right is important even if only a small
> amount of money is involved.

*Norman*, 836 F.2d at 1301 (citations omitted). Defendants urge a reduction based on plaintiff's failure to garner reinstatement or recover on her disability claim. Yet, the court understands that in many civil rights cases,

> issues are overlapping and intertwined. In order to
> represent their clients adequately, attorneys must
> explore fully every aspect of the case, develop all of
> the evidence and present it to the court. Time spent
> pursuing unsuccessful claims that were clearly without
> merit should be excluded. However, the mere fact that
> the litigants did not succeed in obtaining a judgment on
> all of the claims asserted does not mean that time spent
> pursuing these claims should automatically be disallowed.
> Instead the court must consider the relationship of the
> claims that resulted in judgment with the claims that
> were rejected and the contribution, if any, made to
> success by the investigation and prosecution of the
> entire case.

*Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981). Recognizing those considerations, the Supreme Court has instructed that, in some civil rights cases,

> the plaintiff's claims for relief will involve a common
> core of facts or will be based on related legal theories.

13

> Much of counsel's time will be devoted generally to the
> litigation as a whole, making it difficult to divide the
> hours expended on a claim-by-claim basis. Such a lawsuit
> cannot be viewed as a series of discrete claims. Instead
> the district court should focus on the significance of
> the overall relief obtained by the plaintiff in relation
> to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 (citations omitted). In the present case, plaintiff has not identified which hours and expenses were incurred for each claim. Nor is the court convinced such an hour-by-hour review is possible, in view of the fact that both of plaintiff's claims "derive[d] from a common core of operative facts." Consequently, this court declines to dissect the interlocking evidence and consider it in isolation as supporting only one claim or the other.

The adjustment of attorneys' fees is within the discretion of the district court, in any event. *Norman*, 836 F.2d at 1304. The amount of recovery accurately reflects prevailing hourly rates in the Northern District, and has been reduced to eliminate duplicative hours. The fact that plaintiff's attorneys were able to assimilate, organize, and persuasively present sufficient evidence to recover on even one of their client's claims at a late hour in this case, and without benefit of normal discovery, persuades this court that plaintiff's recovery on her retaliation claim was very good. The court accordingly concludes that a downward adjustment in the lodestar is unwarranted.

The court now must determine whether an upward adjustment is warranted. Even if the results obtained are exceptional, no

14

enhancement is permissible, unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed. *Blum*, 465 U.S. at 899, 104 S.Ct. at 1549. In the rare case, enhancement may be appropriate where there is a risk of non-recovery of a fee in the case, if it is shown that such enhancement is necessary to assure the availability of counsel. *See Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 734, 107 S.Ct. 3078, 3091, 92 L.Ed.2d 439 (1986)(O'Connor, J., concurring). Finally, the court must consider the issue of delay in the receipt of payment by counsel for the prevailing party. "[W]here there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." *Norman*, 836 F.2d at 1302 (citing *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1572 n.14 (11th Cir. 1985)).

Upon consideration of the foregoing factors, this court concludes that neither an upward nor downward adjustment of the lodestar is warranted. Accordingly, plaintiff is entitled to recover $24,791.50 for attorneys' fees.

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 8th day of May, 1998.

United States District Judge